# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13-4022-01-CR-C-BP |
| ) | |
| STEFAN KODA WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

On September 8, 2013, defendant Stefan Koda Williams, by and through counsel, filed a motion to suppress evidence. The Government responded in opposition, and a hearing was held on October 1, 2013.

### Procedural History

On March 20, 2013, an indictment was returned by the federal grand jury in Jefferson City, Missouri, charging Defendant with possession with intent to distribute cocaine base, a Schedule II controlled substance. On April 8, 2013, Defendant was arraigned on the indictment.

### Factual Background

On January 4, 2013, Columbia Police Officers James Meyer and Jameson Dowler were conducting patrol in the area of Sexton Road and Madison Street in Columbia, Boone County, Missouri, when they observed a blue 1998 Lincoln Towncar parked with its right side to the curb, facing westbound on Sexton Road. The vehicle was parked in front of 507 West Sexton Road, a residence known to the officers to be a location frequently associated with illegal drug activity. The officers observed that the vehicle was not occupied, but that the running lights were on and exhaust was emitting from the vehicle tailpipe,[1] indicating that the vehicle had been left unattended with the motor running. Officer Meyer recognized this as a violation of municipal ordinance.

---

[1] The officers testified that they were able to see the exhaust emitting from the Towncar because it was a cold January night.

The officers, who were patrolling together in the same patrol car, circled the block, and when they came back to the intersection of Madison Street and Sexton Road, they parked in a position where they could observe the vehicle parked in front of 507 West Sexton Road. The officers got in a position to observe the vehicle because they had a suspicion that the person who left the unattended vehicle idling in front of 507 West Sexton Road may be involved with the illegal drug activity known by the officers to be associated with this particular house. A short time later they observed a black male exit the residence at 507 West Sexton Road, get into the car that was idling in front of the residence, and drive away.

As the vehicle left the curb, Officer Meyer and Officer Dowler observed the driver did not use his turn signal, which the officers erroneously believed to be a violation of Columbia Municipal Ordinance 14-297. Officer Meyer attempted to initiate a traffic stop on the vehicle on Sexton Road in Columbia, Boone County, Missouri, based on his observations. Upon Officer Meyer activating his emergency lights, the driver of the Towncar continued to drive, and Officers Meyer and Dowler noted movements made by the driver inside the vehicle as if the driver was attempting to conceal something. The vehicle continued on West Sexton Road until it came to Mikel Street, turning northbound onto Mikel Street. The vehicle continued northbound on Mikel Street to Jackson Street, where it turned westbound and finally came to a stop on Jackson Street. Once the vehicle came to a stop, the officers exited their patrol vehicle and approached the Towncar. Officer Meyer made contact with the driver, who was identified as Stefan Koda Williams (the defendant), and asked him to step out of the vehicle.

As instructed, Defendant stepped out of the Towncar. Officer Meyer next instructed Defendant to stand at the front of his patrol car and Officer Meyer conducted a safety pat down to check for weapons. Officer Meyer asked for permission to check Defendant's pockets, which he granted. Officer Meyer then asked Defendant for consent to search the vehicle. In response, Defendant said, "I got my right to say no, but I mean, go ahead and check." Officer Dowler began searching and located a glass pipe between the passenger seat and center console. Officer Dowler signaled to Officer Meyer to arrest Defendant, and Officer Meyer instructed Defendant to place his hands behind his back so the officer could place handcuffs on him. Suddenly, Defendant pulled away and began running eastbound on Jackson Street. Defendant turned northbound and ran through a private yard, tripped over a fence and continued to run. At the

back of the residence, Defendant bent over and appeared to be reaching for something inside his sock. The officers caught up to Defendant at this time and secured him in handcuffs. Officer Meyer checked Defendant's sock before escorting him to the patrol vehicle. Defendant began to complain of pain in his left leg so he was placed on the curb. Upon feeling his left leg, Officer Meyer felt what appeared to be a bag containing a rocklike substance. The bag fell from Defendant's pants, at which time Officer Meyer observed it contained approximately 22 individually wrapped "rocks" of a white cakey substance, which was later determined to be "crack" cocaine. Officers Dowler and Meyer also seized a total of $1,024 which Defendant had on his person at the time of arrest. Defendant was transported to the Columbia Police Department by Officer Phillip Eggemeyer. Officers Meyer and Dowler completed a search of the vehicle but found no additional contraband.

## **Discussion**

Defendant's motion seeks to suppress all evidence and items seized from his person and vehicle. Defendant argues three bases for suppression.

The first basis is that his rights under the Fourth Amendment were violated because the officers' reason for the stop of Defendant's vehicle was based on a mistake of law. Defendant argues that the failure to use one's turn signal when pulling from the curb is not a municipal violation as originally alleged by the officers at the time of the stop and in their initial report. Specifically, Defendant argues that his actions did not violate section 14-237 of the Code of Ordinances, City of Columbia Missouri.

The Government concedes, as did the officers who testified at the hearing, that Defendant is correct that section 14-237 of the Code of Ordinances was not violated by Defendant the night his vehicle was stopped, and that this was a mistake of law. However, the officers testified at the hearing, consistent with their supplemental report, that there were other valid reasons to support the stop of Defendant's vehicle. Specifically, the officers testified they had reasonable suspicion to believe that illegal activity was afoot, and that Defendant's actions on the night of January 4, 2013, violated another city ordinance, Columbia Municipal Ordinance 14-298.

The applicable law is set forth in United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011).

> The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. A traffic stop constitutes a seizure for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 809-10, 116 S. Ct. 1769 (1996). To constitute a reasonable seizure, a traffic stop must be supported by, at a minimum, "a reasonable articulable suspicion that criminal activity" is occurring. United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). A traffic violation, however minor provides probable cause sufficient to satisfy the constitutional reasonableness requirement. United States v. Ehrmann, 421 F.3d 774, 780 (8th Cir. 2005). "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation of the officer's part is irrelevant." United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009) (citations and quotations omitted). Similarly, it is irrelevant that the officer would have ignored the violation but for his ulterior motive. Id.

Frasher, at 453.

Here, there the evidence is that the officers believed Defendant violated two Columbia Municipal Ordinances, 14-237 and 14-298, and the officers had reasonable suspicion that illegal activity was afoot.

While it was a mistake of law for the officers to believe Defendant violated Columbia City Ordinance 14-237 regarding failure to use his turn signal, there was no mistake of law as to Defendant's actions violating Columbia City Ordinance 14-298. Ordinance 14-298 prohibits leaving a vehicle unattended with the motor running. The facts in this case clearly show Defendant's actions on the night of January 4, 2013, violated this ordinance. The testimony of both Officers Meyer and Dowler affirm these facts as does the supplemental report. While this violation was not noted in conjunction with the turn signal violation in the original report, there has never been a dispute over the fact that Defendant left his vehicle running unattended, which is a violation of Columbia City Ordinance. Moreover, while Officer Dowler testified he didn't know this action was a violation of City Ordinance, Officer Meyer clearly testified that he did, in fact, know this was a violation of City Ordinance on the evening of January 4, 2013, when he initiated the traffic stop of Defendant's Towncar. Indeed, Officer Meyer filed a supplemental report in March 2013 describing the violation of Ordinance 14-298. This municipal violation alone supports reasonable suspicion for the traffic stop of Defendant's vehicle on the night of January 4, 2013. Ehrmann, 421 F.3d at 780 ("a traffic violation, no matter how minor, creates probable cause for law enforcement to stop a vehicle.").

In addition to the municipal traffic violation which supports the traffic stop of Defendant's vehicle as proper, there are also the articulated statements of Officers Meyer and Dowler stating their suspicion that Defendant was involved in illegal drug activity.

For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest. United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). As such, a traffic stop is governed by the principles of Terry v. Ohio, 392 U.S. 1 (1968). Id. Accordingly, as set forth above, a traffic stop must be supported by a reasonable, articulable suspicion that criminal activity is afoot. Id.

Here, the testimony of both Officers Meyer and Dowler supports that they held reasonable articulable suspicion that Defendant, with his idling, unattended car parked directly in front of a residence known to be involved in illegal drug activity, was himself involved in criminal activity. This suspicion was further heightened once the officers pulled behind Defendant to initiate the traffic stop. Once behind Defendant's vehicle, the officers viewed Defendant making furtive movements inside the car as if he was attempting to conceal something. Further adding to suspicion was Defendant's failure to immediately stop his vehicle, traveling some distance before pulling over.

The law provides that regardless of what was documented in the initial reports, so long as Officers Meyer and Dowler can articulate a reasonable basis that some offense occurred or that they had reasonable suspicion, the traffic stop was valid. See United States v. Mendoza, 677 F.3d 822 (8th Cir. 2012) (the mere fact an incident report omits certain details is not sufficient to render an officer's testimony concerning the underlying facts supporting the legal basis for traffic stop implausible). Here the officers have articulated a reasonable basis for the traffic stop based on the violation of Municipal Ordinance 14-298, and facts supporting reasonable suspicion that criminal activity may have been afoot. These bases are clearly sufficient to support that the traffic stop of Defendant's vehicle was valid under the law and did not violate his Fourth Amendment rights.

The second basis on which Defendant seeks suppression is that the traffic stop was prolonged beyond the time necessary in order to fulfill the legitimate investigative purpose of the stop and that such delay caused the discovery of the evidence. The Government argues in

opposition that the stop was not improperly prolonged, citing to the police patrol vehicle's video in support.

The Eighth Circuit, in United States v. Suitt, 569 F.3d 867, 870 (8th Cir. 2009), sets forth the law on this issue:

> The Supreme Court has analogized roadside questioning during a traffic stop to a *Terry* stop, which allows an officer with reasonable suspicion to detain an individual in order to ask "a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officers' suspicions." United States v. Rodriguez-Arreola, 270 F.3d 611, 617 (8th Cir. 2001) (quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984)). "A constitutionally permissible traffic stop can become unlawful, however, 'if it is prolonged beyond the time reasonably required to complete' its purpose." United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). "During a traffic stop an officer may detain the occupants of the vehicle while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." Id. "A reasonable investigation includes asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose." United States v. Sanchez, 417 F.3d 971, 975 (8th Cir. 2005). "Whether a particular detention is reasonable in length is a fact-intensive question, and there is no *per se* time limit on all traffic stops." United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007).

Here, the patrol car in which Officers Meyer and Dowler were travelling was equipped with video and audio recording equipment, which was activated when Officer Meyer activated the emergency lights on the vehicle. The video was produced as evidence and includes a counter which indicates the time on the video in hours, minutes and seconds. A review of the timer on that video supports that the officers did not unreasonably prolong the stop of Defendant. Specifically the video shows Defendant stopped his vehicle at 21:25:09; that Officer Meyer made contact with Defendant at 21:25:19; Officer Meyer began *Terry* frisk of Defendant at 21:25:33; and completed the frisk at 21:25:54; at 21:26:20 Officer Meyer requested consent to search the vehicle, which Defendant granted at 21:26:27; the search commenced immediately thereafter, and by 21:29:11 Officer Dowler had found the drug paraphernalia and signaled to Officer Meyer (by tapping his wrists together) to arrest Defendant. From the time of the stop to the time Defendant was asked for consent was one minute and eleven seconds. The search was completed within four minutes and two seconds after the stop. There was only fifteen

seconds between the times Officer Meyer returned to Defendant his identification (after running Defendant's identification and driver's license information with dispatch) and Officer Dowler signaling to Officer Meyer to take Defendant into custody. Ehrmann at 780 (officer may detain a motorist while the officer performs routine tasks such as computerized check of a driver's license, vehicle registration and criminal history). All of these time frames are quite short, and none support Defendant's allegation that Officers Meyer and Dowler prolonged Defendant's seizure beyond the time necessary for completion of their investigation. Defendant was stopped because of traffic violations, and a reasonable articulable suspicion that he was involved in drug activity; Defendant was not detained beyond the time necessary for Officers Meyer and Dowler to complete their investigation. See Rodriguez-Arreola, 270 F.3d at 617.

Moreover, case law does not support that an officer must stop his search of a vehicle because another officer who was checking the driver's identification completes his license check and returns the identification to the driver. The Eighth Circuit has held that "[w]hen a motorist gives consent to search his vehicle, he necessarily consents to an extension of the traffic stop while the search is conducted,…" United States v. Rivera, 570 F.3d 1009, 1013-14 (8th Cir. 2009).

The third basis asserted by Defendant in support of suppression is that the consent he gave to the officers to search his vehicle was not freely or voluntarily given, and therefore, violated his Fourth Amendment rights.

A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion. United States v. Cortez, 935 F.2d 135, 142 (8th Cir. 1991). Consent is voluntary if it is the "product of an essentially free and unconstrained choice by its maker," Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973), and not the result of "duress or coercion, express or implied." Id. at 227. To determine whether consent is voluntary the Court looks to the totality of the circumstances surrounding a particular case. Id. The Government bears the burden of proving voluntary consent by the preponderance of the evidence. United States v. Esquivel, 507 F.3d 1154, 1159 (8th Cir. 2007).

7

Here, the consent-to-search conversation was recorded by the police car video. The conversation went as follows: Officer Meyer asks Defendant, "Nothing in your car?" The Defendant responds, "There ain't a damn thing in there." Officer Meyer then asked, "You got a problem with him (Officer Dowler) checking?" Defendant replied, "Well if you all are really stopping me for a violation ya know." Officer Meyer then said, "Well I mean…." Defendant continued, "I got my right to say no, but I mean, go ahead and check."

As the video clearly shows, there were only two officers present on the scene at the time consent to search was given. Neither Officer Meyer nor Dowler had their gun or other weapon drawn, and the consent request was asked by Officer Meyer in a nonconfrontational manner. There is no evidence that Defendant gave consent as a result of duress or coercion, express or implied. Nothing in the conversation indicates that Defendant's consent was in any way involuntary.

Defendant's assertions that he was in custody at the time he gave consent simply is not correct. The Supreme Court has clearly held that while a traffic stop is a seizure of a person, it is not a custodial arrest. See Rodriguez-Arreola, 270 F.3d at 617. Moreover, at the time of consent, the evidence clearly shows that Defendant was not handcuffed and the duration of the traffic stop was just over one minute. This evidence does not support that Defendant was in custody at the time he gave his consent. The police car video affirms there to be no evidence supporting Defendant's allegation that he was in custody at the time he gave consent. Nonetheless, even if Defendant had been in custody, this would not necessarily negate the voluntariness of his consent because the totality of circumstances supports Defendant's consent was voluntary. See United States v. Capps, 716 F.3d 494, 497 (8th Cir. 2013) (totality of circumstances used to determine voluntariness of consent).

Defendant's assertion that his consent was qualified by his statement "if you all are really stopping me for a violation," and therefore, was not voluntarily given because the officers could not show he was stopped for a valid violation of law, is unsupportable and without merit. As set forth above, Defendant was stopped for a valid violation, and moreover, the video clearly shows Defendant was simply stating he consented to the

search. There is no evidence that supports Defendant's assertion that his statement "Well if you all are really stopping me for a violation ya know," qualified or put parameters on the scope of the consent to search his vehicle or somehow rendered his consent involuntary. Any reasonable person would have understood Defendant's statement to Officers Meyer and Dowler to be a statement that he was voluntarily consenting to the officers searching his vehicle. See Florida v. Jimeno, 500 U.S. 248, 251 (1991) (standard for measuring scope of consent under Fourth Amendment is that of objective reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the person giving consent).

It is also significant that Defendant told the officers he knew of his right to refuse consent. Defendant's own words were "I got my right to say no, but I mean, go ahead and check." The evidence shows Defendant's consent was essentially the result of his free and unconstrained choice. The Court further notes there is no evidence that at any time after giving his consent, Defendant revoked his consent, or in any way objected to the Officer Dowler searching his vehicle.

## Conclusion

For the reasons set forth herein, this Court finds that Defendant's Fourth Amendment rights were not violated. It is, therefore,

RECOMMENDED that the motion of defendant Stefan Koda Williams to suppress be denied. [19]

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. Failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 11th day of October, 2013, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge